IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TRACEY LYNN HAMILTON                                                            PLAINTIFF

V.                                    NO. 13-5215

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Tracey Lynn Hamilton, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for DIB on June 17, 2010, alleging an inability to work since December 1, 2006, due to back problems, depression, insomnia, and migraines. (Tr. 131-132, 149, 153). An administrative hearing was held on April 25, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 38-81).

By written decision dated June 29, 2012, the ALJ found that during the relevant time period, Plaintiff had the following severe impairments - degenerative disc disease/degenerative joint disease of the lumbar spine and major depression. (Tr. 26). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal

the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 27). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she was able to only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She was unable to climb ladders, ropes, or scaffolds and had to avoid concentrated exposure to hazards including no driving as part of work. The claimant was further limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and use of little judgment, and the supervision required was simple, direct, and concrete.

(Tr. 28). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as housekeeper, routing clerk/mail sorter; assembly worker/production worker, e.g. compact assembler; and a machine operator, e.g. zipper trimmer machine operator. (Tr. 32-34).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 1, 2013. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Ramirez v. Barnard</u>, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

-3-

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in not finding that Plaintiff's degenerative disc disease medically equaled Listing 1.04A; 2) The ALJ erred in discounting Plaintiff's subjective complaints; 3) The ALJ erred in not considering Plaintiff's obesity to be a severe impairment; and 4) The ALJ's opinion is not based on substantial evidence. (Doc. 9).

#### A. Whether Plaintiff's Degenerative Disc Disease Equaled Listing 1.04A:

Plaintiff argues that the MRI of Plaintiff's spine revealed a disc herniation with significant nerve impingement, which has led to a neuro-anatomic distribution of pain with pain going to the right buttocks and down the right leg, a restriction in the motion of the lumbar spine on two occasions, numbness in the left foot, a loss of reflexes bilaterally from the normal reflex of plus two, and a positive straight leg raise on the left. Plaintiff concedes that the only missing requirement is muscle weakness, and argues that the ALJ should have found that Plaintiff's degenerative disc disease medically equaled Listing 1.04A.

"The claimant has the burden of proving that his impairment meets or equals a listing."

Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010), quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

In order to meet Listing 1.04A, Plaintiff must meet the following criteria:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);...

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

In the present case, the impression of the MRI that was completed on Plaintiff's lumbar spine on May 4, 2010, was as follows:

> 1. Mild intarvertebral disc disease at L4-L5 with mild reduction of vertical disc space height. At this level, a moderate to large central and left lateral disc herniation is identified which partially fills the left anterolateral recess resulting in moderate to severe central and left lateral recess stenosis and left neural foraminal encroachment. A portion of the disc herniation inferiorly extruded but not sequestered. There is probable compromise of the left L5 nerve root in the left lateral recess and left L4 nerve root in the left neural foramen. The right neural foramen is patent.
>
> 2. Small left lateral disc protrusion at L3-L4 resulting in mild left lateral recess stenosis and left neural foraminal encroachment. The left L4 nerve root is slightly displaced posteriorly in the left lateral recess with mild left neural foraminal encroachment at this level.

> 3. The remainder of the examination is unremarkable.
> Note: A transitional vertebrae may be present. Please refer to the films for the method in which the lumbar segments were labeled. Thoracic and lumbar spine evaluation with accurate rib counting may be required.

(Tr. 251).

As indicated by Defendant, there is no evidence that Plaintiff's back disorder affected either the cauda equina or the spinal cord. In addition, on May 26, 2010, a nurse practitioner at Mercy Physicians Plaza reported that Plaintiff's extremities were normal, atraumatic, there was no cyanosis or edema, Plaintiff moved all extremities equally, and there was normal strength and normal tone. (Tr. 359). On March 7, 2011, Dr. Kenneth M. Poemoceah conducted a General Physical Examination, and found there was normal range of motion in her extremities and spine, there was no muscle weakness or muscle atrophy, her gait and coordination were normal, Plaintiff was able to perform all limb functions, and had 100% normal grip in both hands. (Tr. 258-259). An x-ray of her lumbar spine showed postoperative changes from her radical hysterectomy, minimal degenerative changes were noted, and good joint space preservation was noted. (Tr. 260). Dr. Poemoceah found Plaintiff suffered from no limitations. (Tr. 260).

On March 14, 2011, a Physical RFC Assessment was completed by non-examining consultant, Dr. Ronald Davis. (Tr. 263-270). Dr. Davis concluded that Plaintiff was capable of performing medium work with certain limitations. Dr. Davis noted that Plaintiff had no record of pain seeking behavior, aggressive pain management, ESI therapy, physical therapy, or other intervention for back pain, and that owing to Plaintiff's lumbar spine issues, along with longitudinal evidence of treatment sought and given, the medical records would support a RFC of medium work with postural limitations. (Tr. 264-270). This conclusion was affirmed by Dr. Bill F. Payne on August 30, 2011. (Tr. 278).

On October 14, 2011, a nurse practitioner examined Plaintiff and found painful point tenderness to Plaintiff's left lumbar spine/hip area and reduced lumbar spine range of motion was noted. (Tr. 363). Her right and left leg were not tender to palpation, and no abnormalities were noted. Plaintiff's stability, strength and tone of legs were normal. (Tr. 363).

Based upon the foregoing, it is clear that Plaintiff has failed to meet her burden of showing her lumbar spine issues met or equaled all the requirements of Listing 1.04A, and there is substantial evidence to support the ALJ's finding that Plaintiff's spine disorder did not meet or medically equal a listing.

### B.     Credibility Analysis:

Plaintiff argues that the ALJ found that her subjective complaints were not supported by the objective medical evidence, but that the findings of the MRI and of varying physical exams confirm that Plaintiff's medical condition was severe. Therefore, disabling pain was consistent with central spinal stenosis and multilevel degenerative disc disease. In addition, Plaintiff argues that the ALJ erred by not giving sufficient weight to her cousin's statements.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's]

credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. (Tr. 30). The ALJ discussed Plaintiff's daily activities, finding that she had mild restriction in that area. The ALJ noted that Plaintiff was able to take care of her personal needs, cook, clean, and do laundry, but was limited in how long she could stand and needed help with any lifting, vacuuming, bending, bathing the dog, and all outside work and repairs. (Tr. 29). The ALJ also noted that Plaintiff was able to drive, shop, handle her finances, and spend time with family and friends. (Tr. 29). Plaintiff also indicated she shopped and went to the hair salon on a regular basis. (Tr. 183).

The ALJ also discussed the fact that although Plaintiff complained of depression, in 2007, she was not seen again until October of 2008, when she reported severe depression with suicidal ideation. He reported that Plaintiff indicated that she had stopped her anti-depressant because it was ineffective and she did not come back for re-evaluation in January 2008 as requested. (Tr. 30). The ALJ also pointed out that Plaintiff was advised to quit smoking, was put on anti-depressants, and was shown exercises for her back and legs, and that poor compliance was discussed and the importance of follow up visits was emphasized. (Tr. 30). Plaintiff reported that she had not done the exercises, and subsequently reported that her depression was much improved on increased medication dosage.  The ALJ reported that by April 2009, Plaintiff reported she felt "good" on current medications and was sleeping well. (Tr. 30). It is also

noteworthy that other than the general physical examination performed by Dr. Poemoceah on March 7, 2011, Plaintiff was not seen for her physical impairments until October 14, 2011, when she presented herself to a nurse practitioner for evaluation of back pain. (Tr[ 360). Plaintiff was subsequently seen in October, November, and December of 2011 for bladder and kidney problems. (Tr. 350, 352, 353).

The ALJ addressed the opinion of Katherine Leann Hamilton, Plaintiff's cousin, noting that she basically supported Plaintiff's allegations about her limitations, but added little new evidence to the determination of Plaintiff's disability. (Tr. 32). He considered her opinion, and stated that it could not be considered that of a disinterested third party whose statements would not tend to be colored by affection for Plaintiff and a natural tendency to agree with her subjective complaints (Tr. 32). The ALJ also found that Ms. Hamilton's report, like Plaintiff's statements, was not supported by the objective medical evidence. (Tr. 32).

The Court finds that the ALJ properly considered the evidence and that there is substantial evidence to support the ALJ's credibility findings.

### C.     **Whether Plaintiff's Obesity was Severe Impairment**:

Plaintiff argues that she weighed 185 pounds in October of 2011 and reported her height as being 5 feet and 3 inches, which she argues means that she had a BMI of 32.8 at the time. Therefore, according to Plaintiff, she qualifies as obese, and the ALJ did not explain why it was not considered a severe impairment.

An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521,

416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

The Court first notes that Plaintiff did not list obesity as an impairment in her application, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). In addition, there is no indication in the records that establish that obesity caused Plaintiff additional functional limitations. There is no indication that Plaintiff's physicians ever stated that she had any limitations due to obesity. Finally, the ALJ's RFC assessment included limitations that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and that she was unable to climb ladders, ropes, or scaffolds. Therefore, the RFC provided for any limitations that may have related to obesity.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's findings regarding severe impairments, and that Plaintiff did not present evidence that require other findings.

**D.     Whether the ALJ's Opinion is Based on Substantial Evidence**:

Plaintiff argues that the ALJ claimed to consider the Listings under 1.00 in conclusory fashion, but did not explain how he did so, and given the state of the evidence, no reasonable mind could conclude that the ALJ's decision is supported by evidence adequate to support the conclusion that Plaintiff's impairment did not meet or medically equal Listing 1.04. Plaintiff is basically arguing his first point on appeal, which the Court already considered and addressed above. In addition, "[t]here is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011); see Bogart v. Colvin, No. 12-

5207, 2013 WL 5937041 at *1 (W.D. Ark., Nov. 6, 2013). Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence in the record as a whole to support the ALJ's decision.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 24th day of November, 2014.

*/s/ Erin L. Setter*
HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE